UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:09CR226 CDP |
| ) | (FRB) |
| MICHAEL JOSEPH RUSSO, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM,
REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

Motions of Defendant Michael Joseph Russo

1. Motion To Suppress Evidence (Safe Deposit Box)
   (Docket No. 42); and
2. Motion To Suppress Evidence (7367 Woodland Way)
   (Docket No. 44)

Testimony and evidence was adduced on defendant's motions at a hearing before the undersigned. A transcript of the hearing was prepared at the court's order and was filed on August 4, 2009 (See Docket No. 69). From the testimony and evidence adduced at the hearing the undersigned makes the following findings of fact and conclusions of law:

Findings of Fact

On October 30, 2007, Special Agent Daniel P. Bracco, of the Federal Bureau of Investigation (F.B.I.) applied for a warrant

to search the premises at 7367 Woodland Way, St. Louis, Missouri. The application was made to a United States Magistrate Judge and was accompanied by an affidavit of Agent Bracco in support of the application.

The affidavit identified 7367 Woodland Way as the residence of Michael Joseph Russo, the defendant here. The affidavit set out details of an investigation of Russo and others for suspected gambling activities, carried out by the F.B.I. and other law enforcement agencies.

The affidavit set out that in January, 2004, Russo had been interviewed by law enforcement officials and had been found to have $20,000.00 in currency in his possession. During the interview Russo told officers that the currency was the proceeds of a sports betting/bookmaking business which he operated. In November, 2004, law enforcement officers collected and searched trash from Russo's residence at 7367 Woodland Way. In the trash the officers found shredded paper documents which were reconstructed and found to be what appeared to the officers to be settlement reports of bookmaking activity, telephone numbers and customer identification numbers. Also found was a telephone bill for the period of October 4 through November 3, 2004. The bill reflected 867 telephone calls during the period, including calls to numbers associated with Douglas Lee Brown and B.J. Taylor, persons known to law enforcement officials as bookmakers.

The affidavit noted that from November, 2006, through March 2007, law enforcement officials conducted an investigation of gambling/bookmaking activities of Douglas Lee Brown. During that investigation an undercover police officer placed numerous bets on sporting events with Brown. On March 30, 2007, agents of the F.B.I. obtained a search warrant for the residence of Douglas Lee Brown at 396 Greentrails Drive South, Chesterfield, Missouri. The warrant was executed on April 3, 2007. During the execution of the warrant agents seized numerous records relating to gambling/bookmaking activity by Brown. The agents also seized almost $300,000.00 in currency found in Brown's home, auto and in a safe deposit box which he rented. Among the items seized from Brown's residence was a laptop computer. A subsequent examination and analysis of the computer found it to contain records related to bookmaking activities by Brown, including recorded telephone conversations of such activity. The recorded calls included conversations between Michael Joseph Russo and B.J. Taylor. During some of the calls Brown and Russo discussed the details of the operation of a computer program which they both were using to conduct their respective gambling/ bookmaking operations.

The affidavit also set out that during the execution of the search warrant at Brown's residence in April 2007, Brown was present and was interviewed by law enforcement officers. During the interview Brown identified Michael Joseph Russo and B.J. Taylor

as a fellow bookmakers. Brown stated that Russo had offered to sell to Brown a computer program which Russo used to track clients, bets made, bets owed and winnings.

The affidavit went on to note that on October 19, 2007, trash from Russo's residence at 7367 Woodland Way was collected and searched. In that search law enforcement officers found and seized handwritten notes which appeared to be related to betting activity, including notes of odds on sporting events, bettor numbers, account balances and envelopes on which were written what appeared to be bettor numbers and amounts owed.

The affidavit set out the knowledge of the affiant and other law enforcement officials gained through their training and experience about the habits, methods and manner of operation of gamblers/bookmakers. The affidavit stated that based on this training and experience, as well as the specific information gained in this particular investigation they had reason to believe that various described items could be found on the premises at 7367 Woodland Way, and that these items were evidence of, instrumentalities used in the commission of, and/or fruits of criminal activity carried on in violation of various federal statutes relating to gaming activity. These items were set out on a "list" attached to the Application and Affidavit. (See Government's Exhibit H-1, Application And Affidavit For Search Warrant.)

Based on the information set out in the Application and Affidavit, the Magistrate Judge found probable cause to believe that the various items enumerated on the "List" could be found on the premises at 7367 Woodland Way, St. Louis, Missouri, and issued a warrant to search those premises. (See Government's Exhibit H-2, Search Warrant.)

On November 7, 2007, agents executed the search warrant at 7367 Woodland Way and seized various items found therein. (See Government's Exhibit H-3, Search Warrant Return with attached inventory of items seized.)

Among the items found by the agents during the execution of the search warrant at 7367 Woodland Way on November 7, 2007, was a paper folder on which were written the words "Fritz Sports" and "lockbox". Inside the folder agents found tax records, and records which appeared to be related to gaming activity. They also found a contract for a safe deposit box, Number 1163, US Bank, 150 Northland Shopping Center, St. Louis, Missouri; records showing the contract was current, and a key number 1163.

Based on this discovery, on that same day, Agent Bracco applied to a United States Magistrate Judge for a warrant to search safe deposit box #1163, US Bank, 150 Northland Shopping Center, St. Louis, Missouri 63136. The warrant was accompanied by an affidavit of Agent Bracco. The affidavit was identical to the one filed with the application to search the Woodland Way residence with the

additional information relating to the discovery of the safe deposit contract and key at the residence. The affidavit set out, as did the one filed in support of the application to search the residence, that based on their training and experience the affiant and other investigating officers knew "That bookmakers/illegal gamblers wishing to store and maintain documentation, expensive items, records, removable hard drives, and cash away from their residence are likely to utilize a safe deposit box as a secure depository for such items." The affidavit also noted that computers were found during the search of the Woodland Way residence. The affidavit stated that based on all of the information set out in the affidavit, it was believed that certain enumerated items, as set out on a "List" attached to the affidavit, could be found in the described safe deposit box. (See Government's Exhibit I-1, Application And Affidavit For Search Warrant.)

Based on the information set out in the Application and Affidavit, the Magistrate Judge found probable cause to believe that the various enumerated items could be found in the described safe deposit box and issued a warrant to search the box. (See Government's Exhibit I-2, Search Warrant.)

On that same day agents executed the warrant and found and seized from the safe deposit box a computer "floppy disc". (See Government's Exhibit I-3, Search Warrant Return with attached

inventory of items seized.)[1]

## Discussion

As grounds to suppress the evidence seized from his residence the defendant asserts in his motion, "The search in question was conducted pursuant to a search warrant and supporting affidavit, said affidavit being comprised of conclusions, based not on facts but on speculation of the applying agent, as well as hearsay from a source with no indicia of reliability." He further claims that, "[T]he affidavit and the warrant is in all respects overbroad and based on speculation and is not specific in its basis for concluding the contraband is to be found on the premises described." The exact same assertions are made in his motion to suppress the evidence seized from his safe deposit box.

Search warrants to be valid must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a

---

[1] At the motion hearing before the undersigned Agent Bracco testified that nothing of evidentiary value was found on the floppy disc seized from the safe deposit box. Several weeks after the hearing the Assistant United States Attorney wrote a letter to the undersigned stating that subsequent examination of the floppy disc had revealed information of evidentiary value. (See Docket No. 76). The undersigned then ordered counsel for the defendants to notify the court in writing whether they wished to re-open the motion hearing in view of the information set out in the prosecution's letter. (See Docket No. 77). Counsel for Defendant Russo filed a notice with the court stating that he did not wish to reopen the hearing. Defendant Russo specifically stated in the notice that he continued to rely on his previously filed Motion To Suppress Evidence and on the testimony adduced at the previous hearing. (See Docket No. 81).

crime, contraband, or a person for whose arrest there is probable cause, may be found in the place to be searched. <u>Johnson v. United States</u>, 333 U.S. 10 (1948); <u>Warden v. Hayden</u>, 387 U.S. 294 (1967); Rule 41, Federal Rules of Criminal Procedure. The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions. "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." <u>Brinegar v. United States</u>, 338 U.S. 160, 176 (1949). Probable cause is "a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983). Applications and affidavits should be read with common sense and not in a grudging, hypertechnical fashion. <u>United States v. Ventresca</u>, 380 U.S. 102, 109 (1965). Probable cause may be found in hearsay statements from reliable persons, <u>Gates</u>, 462 U.S. at 245; in statements from informants corroborated by independent investigation, <u>Draper v. United States</u>, 358 U.S. 307, 313 (1959); or in observations made by trained law enforcement officers, <u>McDonald v. United States</u>, 335 U.S. 451, 454 (1948). Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented. <u>Gates</u>,

462 U.S. at 230.  Once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference if there is a substantial basis for the finding.  Gates, 462 U.S. at 236.

In his motion the defendant avers that the affidavits made in support of the search warrants at issue contain conclusions and speculation not based on fact, and are based on hearsay information from a source not shown to be reliable.  Other than these general assertions he makes no further specific claim as to any deficiency of the affidavits.

As to his claim that the affidavits contain hearsay information from a source not proven reliable the undersigned notes that at the hearing on the defendant's motion counsel for defendant Russo questioned Agent Bracco, the affiant, concerning statements of Douglas Lee Brown made to agents on April 3, 2007, concerning bookkeeping activity of Michael Joseph Russo, which were set out in the affidavits.  (See Hearing Transcript at Pp. 44-46).  Counsel questioned Agent Bracco as to his lack of prior contact with Brown, and lack of information about Brown's reliability.  It is thus presumed that this is the basis for the claim made in the defendant's motion.  As is noted above, hearsay information from an informant may support a finding of probable cause if the information furnished is corroborated by independent investigation conducted by law enforcement officials.  Draper, supra; Gates,

supra. As noted by Agent Bracco in response to the questions put to him at the hearing by counsel for defendant Russo, the statements made by Brown to agents on April 3, 2007, about the bookmaking activity of Russo were later corroborated by telephone records and the recorded conversations between Brown and Russo found stored on the computers found and seized pursuant to the search warrant executed on Brown's residence on April 3, 2007. The undersigned notes that other information set out in the affidavit and gathered in independent investigation also corroborates Brown's information, namely Russo's own statement to law enforcement officials in January, 2004, that a large amount of currency found on his person at that time was the proceeds of a sports betting/bookmaking business which he operated; and the items found in searches of trash from Russo's residence made both before and after Brown provided information, which items appeared to be related to gambling/bookmaking activity. Thus, there is ample information in the affidavits which corroborates Brown's statements to the agents as set out in the affidavits.

As to the defendant's claim that the affidavits contain conclusions and speculation not based on fact, the undersigned notes that there are conclusions set out in the affidavits, namely conclusions that, based on information gathered in the investigation and on the training and experience of the investigating officers, Russo was engaged in gambling/bookmaking

activity and that evidence of such activity could be found in Russo's residence, and later, safe deposit box. While these are conclusions, they are not speculative. Rather they are based on factual information including Russo's own statement about his activity, Brown's statement about Russo's activity, and the items found in trash from Russo's evidence. This provides ample grounds for the conclusion that Russo is engaged in bookmaking/gambling activity. The affidavits also set out that from training and experience, the affiant and other law enforcement officials involved in the investigation are familiar with the habits and methods of operation used by bookmakers in carrying out their operations including the kinds of records kept by them and the manner in which such records are kept, thus leading to the conclusion set out in the affidavits that the enumerated items set out on the "List" attached to the affidavits could be found on the described premises. Knowledge of law enforcement officials gained through training and experience is properly considered in a probable cause determination. United States v. Meek, 366 F.3d 705, 712 (9th Cir. 2004); United States v. Blair, 214 F.3d 690, 696 (6th Cir. 2000); United States v. Jimenez, 780 F.2d 975, 978 (11th Cir. 1986)(Officers knowledge of modus operandi of persons engaged in criminal activity properly considered in probable cause determination); United States v. Seybold, 726 F.2d 502, 504 (9th Cir. 1984)(Opinion of experienced law enforcement agents highly

important in making probable cause determinations). The conclusions made in the affidavits are well founded and not speculative.

The defendant also claims in his motion that the warrant is overbroad. Absent a more specific enunciation of the claim it is assumed that this reference is to the "list" of items to be seized attached to and incorporated into the warrants.

"The warrant clause of the Fourth Amendment categorically prohibits the issuance of any warrant except for one 'particularly describing the place to be searched and the person or things to be seized.'" Maryland v. Garrison, 480 U.S. 79, 84 (1987)(quoting United States Constitution, Amendment IV). "The degree of specificity required will depend on the circumstances of the case and on the type of items involved." United States v. Horn, 187 F.3d 781, 788 (8th Cir. 1999). The particularity requirement "is a standard of 'practical accuracy' rather than a hypertechnical one." United States v. Peters, 92 F.3d 768, 769-70 (8th Cir. 1996). Where "the precise identity of goods cannot be ascertained at the time the warrant is issued, naming only the generic class of items will suffice." United States v. Johnson, 541 F.2d 1311, 1314 (8th Cir. 1980). See, e.g. United States v. Dennis, 625 F.2d 782, 792 (8th Cir. 1980) (Particularity requirement satisfied by warrant authorizing seizure of "certain books and records (or items of evidence) relating to the extortionate credit transaction

business"); United States v. Coppage, 635 F.2d 683, 687 (8th Cir. 1980)(Particularity requirement satisfied by warrant authorizing seizure of "any and all . . . books, records, chemical equipment, and personal papers relating to the manufacture and distribution of methamphetamine . . . ").

The warrants here, although for the most part describing the classes of items to be seized in generic terms, were sufficiently particular to meet the Fourth Amendment requirement. Morever, there was sufficient information set out in the affidavits to support a finding that such items could be found on the premises described and the warrants were not unconstitutionally overbroad.

## Conclusion

For all of the foregoing reasons the defendant Michael Joseph Russo's Motions to Suppress Evidence (Docket Nos. 42 and 44) should be denied.

   3.   Motion to Sever (Docket No. 40); and
   4.   Motion For Relief From Improper Joinder (Docket No. 41)

In each of these motions defendant Russo seeks a separate trial from co-defendant Douglas Lee Brown. The undersigned has been informed by counsel for co-defendant Brown that Brown has reached an agreement with the prosecution for the disposition of this case without a trial, and that Brown does not intend to proceed to trial in this cause. The undersigned further notes that co-defendant Brown is scheduled to appear before the district court

for a change of plea hearing in this cause on March 24, 2010.

Therefore, defendant Russo's Motion To Sever (Docket No. 40) and Motion For Relief From Improper Joinder (Docket No. 41) should be denied as moot.

According,

**IT IS HEREBY RECOMMENDED** that defendant Russo's Motion to Suppress Evidence (Safe Deposit Box) (Docket No. 42); and Motion to Suppress Evidence (7367 Woodland Way) (Docket No. 44) be denied.

**IT IS FURTHER RECOMMENDED** that defendant Russo's Motion To Sever (Docket No. 40) and Motion For Relief From Improper Joinder (Docket No. 41) be denied as moot.

**IT IS HEREBY ORDERED** that any objections to this Report and Recommendation shall be filed **not later than March 22, 2010**. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

*[signature: Frederick R. Buckles]*
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of March, 2010.